

# THE ATTORNEY GENERAL
# OF TEXAS

**PRICE DANIEL**
ATTORNEY GENERAL

AUSTIN, TEXAS

April 10, 1947

Hon. Jewell Helpinstill, Chairman
Committee on Motor Traffic
House of Representatives
Austin, Texas

Opinion No. V-136

Re: Constitutionality of
House Bill No. 690,
Fiftieth Legislature,
Regular Session, 1947,
relative to registra-
tion of motor vehicles
by nonresidents.

Dear Sir:

House Bill No. 690, Fiftieth Legislature, Reg-
ular Session, 1947, which is a bill to amend Chapter 342,
page 800, Acts of 1935, Forty-Fourth Legislature, Regular
Session, reads as follows:

"Sec. 2. (a) A nonresident owner of a
motor vehicle , trailer, or semi-trailer
which has been duly registered for the cur-
rent year in the State or country of which
the owner is a resident and in accordance
with the laws thereof, may, in lieu of reg-
istering such vehicle as otherwise required
by law, apply to the State Highway Depart-
ment through a County Tax Collector for the
registration thereof as provided by law, ex-
cept that the privileges granted as other-
wise provided for in this Act shall not ap-
ply to any motor vehicle, trailer, or semi-
trailer operated within this State for the
transportation of persons or property for
compensation or hire. Provided, however,
that motor vehicles properly licensed in
another State or county operated for compen-
sation or hire may be allowed to make not
to exceed two (2) trips during any calen-
dar month and remain on each of said trips
within the State not to exceed four (4)
days, without being registered in this
State, in the event that under the laws of

such other State or country like exceptions
are granted to motor vehicles registered un-
der the laws of and owned by residents of
this State.  Provided that in any prosecu-
tion for the violation of this Act, it shall
not be necessary for the State to allege
or prove that there are no like laws in ef-
fect in such other State or country.

"(b)  Provided however, none of the pro-
visions of this Section shall apply to or ex-
empt the operator, owner or lessee of any
motor vehicle being driven under its own pow-
er, or towed or otherwise transported by be-
ing attached or coupled to some other vehicle
from or through this State over the highways
thereof, for the purpose of sale, resale or
trade in another State, or after having been
sold, resold, or traded to any person, com-
pany, corporation, or association in another
State, but each such motor vehicle shall be
registered for the Department through the
County Tax Collector of the first county
through which said motor vehicle passes af-
ter entering this State; or if moving from
this State to another State, of the county
from which said motor vehicle first moves,
and a registration fee of Three Dollars ($3)
for each such vehicle shall be paid to said
Tax Collector unless such motor vehicle has
been previously registered with the Depart-
ment in lawful manner and license fees paid.
The Tax Collector of the county where such
registration is had shall furnish the opera-
tor of said motor vehicle with a receipt on
a form prescribed by the Department and said
operator shall retain said receipt in his
possession and exhibit same to any member of
the State Highway Patrol, or other peace of-
ficer, for inspection upon request.  If said
operator is unable to present said receipt to
said member of the State Highway Patrol, or
other peace officer, he and the motor vehicle
which he is operating shall be detained by
such member of the State Highway Patrol, or
peace officer until proper registration is
had and said receipt issued by the Tax Collec-
tor of some county through which said motor
vehicle is being, or has been driven or towed,
or otherwise transported by being attached or

coupled to some other vehicle from or through this State over the highways thereof.

"(c) Any person or any officer, agent or employee of any corporation, company, or association who violates any of the provisions of this Section shall be guilty of a misdemeanor and upon conviction thereof shall be fined in any sum of not more than One Hundred Dollars ($100)."

Section 2 of Article 827b, V. P. C , in its present form was enacted by the Forty-fourth Legislature, Chapter 342, page 800, Acts of 1935. The only change made in Section 2 of Article 827b, supra, by the proposed amendment as embraced in House Bill No. 690 is the addition after the second sentence of the first paragraph of said Section 2 of the following:

"Provided that in any prosecution for the violation of this Act, it shall not be necessary for the State to allege or prove that there are no like laws in effect in such other State or country."

Article 827b, Vernon's Penal Code, is commonly known in this State as the "Nonresident Temporary Registration Law", and it generally regulates the temporary registration of vehicles operated over the highways of this State by out of state visitors and nonresidents. It is a well established principle that the State may make regulations with respect to the registration of motor vehicles applicable to nonresidents driving into or through the State. 1 Blashfield Cyclopedia of Automobile Law and Practice § 186, page 154. Likewise the State may grant to nonresidents a limited use of the State Highways at a nominal fee by the way of reciprocity, and such legislation is not invalid as an unreasonable classification; and further, the State may condition the use of its highways by nonresidents to those nonresidents who have complied with similar legislation in their respective states. Henrick v. Maryland, 235 U. S. 610, 35 S. Ct. 140, 59 L. Ed. 385; 1 Blashfield Cyclopedia of Automobile Law and Practice § 186, page 154.

The problem presented by the proposed amendment to Section 2 of Article 827b, supra, is entirely different from the general principles above stated

regarding the right of the State to regulate the use of its highways by motor vehicles. The serious question to be decided involves the right and power of the Legislature under our Constitution to dispense with certain allegations and proof on the part of the State in the prosecution of a person for the violation of a criminal statute.

Article I, Section 10, of the Constitution of Texas provides in part as follows:

"In all criminal prosecutions the accused shall have a speedy public trial by an impartial jury. He shall have the right to demand the nature and cause of the accusation against him, and to have a copy thereof. . . ." (Emphasis ours)

Article I, Section 19, of the Constitution of Texas provides as follows:

"No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised except by the due course of the law of the land." (Emphasis ours)

It is to be observed that under Article 827b, Section 2, V. P. C., as it now stands, and also as provided for in House Bill 690, the privileges granted to a nonresident whose vehicle is properly registered for the current year in the State or country of which he is a resident do not apply to any motor vehicle, trailer, or semi-trailer operated within this State for the transportation of persons or property for compensation or hire, with the exception, however, that motor vehicles properly licensed in another State or country and operated for compensation or hire may be allowed to make not to exceed two trips during any calendar month and remain on each of said trips within this State not to exceed four days without registering in this State, in the event that under the laws of such other State or country like exceptions are granted to motor vehicles registered under the laws of Texas and owned by residents of Texas. In other words, and stated in another way, a motor vehicle owned or operated by a nonresident and used for the transportation of property or persons for compensation or hire may make not to exceed two trips into this State in any one calendar month and remain here not exceeding four days on each

trip without registering his vehicle in this State provided a citizen of Texas is granted the same rights and privileges in the operation of his motor vehicle in the State or country and under the laws of the State or country of which the nonresident is a resident. All of these matters are provided for in the same section of the Act and within the same paragraph.

As the statute now reads, and without regard to the proposed amendment contained in House Bill 690, it is necessary in a prosecution for violation of the statute for the State to allege and prove the exceptions regarding not more than two trips in a calendar month and the non-existence of reciprocity in laws between Texas and the State or country of which the accused is a resident. The amendment embraced in House Bill 690 would dispense with such allegations and proof. It is to be noted, however, that even under the amendment all these matters are still contained in the same section and paragraph, including the new and additional sentence which dispenses with the now necessary allegations and proof.

It was established at an early date in this State that it was beyond the power of the Legislature to dispense with the statement in an indictment of that which is essential to the description of the offense, and any statute which authorizes the omission of the essential parts of the description of an offense is in violation of the Bill of Rights contained in our State Constitution (Art. I). Hewitt v. State, 25 Tex. 722 (Sup. Ct. 1860); State v. Duke, 42 Tex. 455 (Sup. Ct. 1875). It was under this established principle of law that the courts of this State struck down the "Common Sense Indictment Act of 1881", which dispensed with numerous allegations previously required in an indictment, holding that the form of indictment prescribed by the Legislature under that Act was repugnant to Section 19 of Article I of the Constitution. Williams v. State, 12 Cr. R. 395 (Tex. Crim. App. 1882); Young v. State, 12 Cr. R. 614 (Tex. Crim. App. 1882).

It is believed that a discussion of the leading cases touching upon the problem and question here presented will be helpful.

In Hewitt v. State, supra, decided by the Supreme Court in 1860, the accused was indicted and convicted for selling whiskey. At the time there was no inhibition in this State against the sale of whiskey unless it was

sold without a license. The statute under which the indictment was had provided in part that "if any person or firm shall sell or be in any wise concerned in selling spirituous, vinous, or other intoxicating liquors in quantities less than one quart, without first having obtained a license . . . he, she, or they shall be deemed guilty of a misdemeanor," and "That in all prosecutions for any violations of any of the provisions of this act, it shall be sufficient to allege and prove that the person charged with any such violation, did sell, or was concerned in selling spirituous, vinous, or intoxicating liquors; and it shall not be necessary to allege or prove the kind of liquor sold, the name of the persons to whom the same was sold, or that the same was sold without license." (Emphasis ours) The Supreme Court held that the Legislature could not dispense with the allegations in the indictment that the sale was without a license, because the very omission authorized was a necessary element of the offense. The Court said:

> "The gist of the offense is the omission of this party. We do not think that the legislature can condemn a particular act as an indictable offense, and then empower the courts in the prosecution of a party for the commission of that act thus condemend, to substitute in the indictment and proof of it a different act, which is not the same, and is not itself prohibited by law. 'No citizen of this state shall be deprived of life, liberty, property, or privileges, outlawed, exiled, or, in any manner, disfranchised, except by due course of the law of the land.' Bill of Rights, O. & W. Dig. 14." (Emphasis ours)

The question of the actual location in the statute of the exception or omission clause was not discussed or apparently considered in the Hewitt Case. It is plain from the case that the offense involved could not be charged without alleging the sale was without a license. The case has been uniformly followed by the Court of Criminal Appeals.

Some fifteen years later in State v. Duke, supra, the Supreme Court was called upon to determine the validity of an indictment charging a person with carrying a pistol without negation of the exceptions contained in the statute with reference to policemen

and others enumerated. The exceptions in the statute appeared as a part of the same paragraph and section making it an offense to carry a pistol. The court held the exceptions essential parts of the offense, saying:

"But being essential parts of the description of the offense, a statute authorizing their omission would be in violation of the Constitutional right to be exempt from answering 'any criminal charge but on indictment or information,' and of the guaranty that 'No citizen of the State shall be deprived of life, liberty, property, privileges, outlawed, exiled, or in any manner disfranchised, except by due course of the law of the land.' (Bill of Rights, Sections 8 and 16.)" (Emphasis ours)

Subsequent to the rendition of the opinion in the Duke Case the Legislature changed the statute making it an offense to carry a pistol and all those matters regarding exceptions to its application were placed in a separate article. Thereafter it was uniformly held that it was not necessary to negative the exceptions referred to in the Duke Case in an indictment or information. See Baker v. State, 106 S. W. (2d) 308 (Tex. Crim. App. 1937).

In Branch's Annotated Penal Code, Section 510, a number of cases are cited holding and announcing the rule that where the exceptions to a penal statute are in distinct articles or sections from the one defining the offense, or they are not a necessary part of the definition of the offense, or descriptive of it, and if the exception is not the gist of the offense, it is not necessary to negative the exception. Williams v. State, 39 S. W. 664 (Tex. Crim. App. 1897); Lovery v. State, 185 S W. 7 (Tex. Crim. App. 1916).

The next era in our criminal jurisprudence which is outstanding in so far as the question herein involved is concerned began with the enactment of the "Dean Law" in 1919. That law as originally enacted provided in part that "It shall be unlawful for any person . . . to . . . sell, . . . spirituous, vinous or malt liquors . . . except for medicinal, mechanical, scientific or sacramental purposes." There was no provision in the statute saying that it was not necessary on the part of the State to

allege or prove these exceptions. However, the Court of Criminal Appeals consistently held under this statute that it was absolutely necessary to negative the exceptions, and it thus seems certain that the court would have held any attempt on the part of the legislature to dispense with such exceptions in the law as written as unconstitutional.

Later the "Dean Law" was amended by the Legislature and the exceptions with regard to medicinal, mechanical, scientific or sacramental purposes were placed in a separate section of the statute, and the court thereafter, beginning with Crowley v. State, 242 S. W. 472 (Tex. Crim. App. 1922), consistently held that it was not necessary to negative the exceptions in the indictment.

The repeal of the "Dean Law" and the enactment of the Texas Liquor Control Act (Article 666-1,etc., Vernon's Penal Code) again brought before the courts further discussion on the question involved. In Anderson v. State, 105 S. W. (2d) 258 (Tex. Crim. App. 1936), the court was called upon to consider an information filed under Article 666-25, V. P. C., which at the time provided that "no sale or delivery of liquor shall be made on or from the premises of the holder of any permit (except upon the prescription of a duly licensed physician): . . . On Sundays." The court held the information fundamentally defective for failure to negative the exception regarding a prescription by a physician, and this notwithstanding Section 9 of the Act (666-9, V. P. C.) making it unnecessary to negative an exception in any indictment or information filed under the Act. In so holding the court said:

"We are not unaware of the fact that section 9, art. 1, of said chap. 467, supra (Vernon's Ann. P. C. art. 666-9), provides in general terms that it shall not be necessary for any information, complaint, or indictment to negative any exception contained in this act concerning any prohibited act, etc., but this court has uniformly held that where the exception is written in the body of the law, and, as said in some of the cases, is made part of the enacting clause of the statute itself, we cannot give application to the

terms of section 9, supra. The exception
is so clearly made part of the offense, and
is so plainly written into the very defini-
tion and description of the offense as that
one cannot be read without the other. It
would have been comparatively easy for the
Legislature to have put the exception in a
separate clause, or to have written it in
a separate place so as that we would not
be compelled to hold it an essential part
of the definition of the offense, but as
we find it we do not feel privileged to
strike down the great number of decisions
written by this court and by our illustrious
predecessors, hence our holding as above
indicated." (Emphasis ours)

Finally, the Court of Criminal Appeals in Bak-
er v. State, supra, after reviewing all the leading auth-
orities on the different phases of the question presented
in this opinion, announced and restated the controlling
rules on the subject. The court said:

"  . . . .

"It would seem too plain for argument
that if the exception or omission mentioned
in a statute be a necessary part of the des-
cription of the offense, it should be set
out and properly negatived in order to meet
the constitutional guarantee to every citi-
zen, of an indictment which should state the
nature and character of the offense charged
. . . . (Emphasis ours)

"  . . .

"From what we have said above, and as
far as we have been able to ascertain, our
courts have uniformly held that when the Leg-
islature sees fit to create exceptions to
the general penal provisions of a statute
if such exceptions be placed in a separate
section or article from the one containing
the definition of the offense, or if they
be not such as to be essential to the def-
inition of the offense, it will not be nec-
essary to negative such exceptions in the
indictment charging such offense. This

<u>rule seems uniformly adhered to even though
the exceptions referred to had, in some for-
mer enactment, been written into the enact-
ing clause of the offense in such way as to
cause this court to hold it necessary for
same to be negatived in the indictment char-
ging such offense.</u>

"We feel impelled to say that if there
be possibly an exception to the rule above
mentioned, it must be when the exception or
omission, as in the Hewitt Case, supra, is
of the very gist of the offense, and then
same would have to be negatived in the in-
dictment, no matter where its location in
the statute, and the Legislature in such
latter case would be powerless to enact a
statute making it unnecessary to negative
such an exception, and this, as stated,
whether such exception be in the article
defining the offense or be in a separate
article.  In other words, if the thing for-
bidden by the particular statute under con-
sideration could not be proved, or the case
could not be made out without proof of the
so-called exception or omission, then said
exception would be a necessary element of
the offense, and its existence should be
negatived in the indictment and find sup-
port in proof.

"If, however, the exception be of such
form and character as that a prima facie
case could be made out against the accused
for the violation charged, without proof of
the omission or exception, then clearly the
Legislature might by enactment have placed
such exception in a separate article or sec-
tion and there is no need for their negation."
(Emphasis ours)

The rules announced in <u>Baker v. State</u>,
supra, have found application in prosecutions for the
illegal practice of law under Article 430a, V. P. C.,
<u>Howland v. State</u>, 151 S. W. (2d) 601 (Tex. Crim. App.
1941); prosecutions for the illegal practice of op-
tometry under Articles 735-738, V. P. C., <u>Blumberg v.
State</u>, 161 S. W. (2d) 1082 (Tex. Crim. App. 1942);

and prosecutions for unlawful possession of marihuana under Article 725b, V. P. C., Medina v. State, 193 S. W. (2d) 196 (Tex. Crim. App. 1945).

Applying the above principles to Article 827b, V. P. C., as it is amended by House Bill No. 690, it is our opinion that the registration exception contained therein with respect to motor vehicles of a nonresident operated into this State and transporting persons or property for compensation or hire not more than two trips in any calendar month and to remain here not to exceed four days on any one trip in the event of reciprocity in law between this State and the State or country of the nonresident, being a part of the section itself defining the offense, must be considered descriptive of the offense itself. It would therefore be necessary on the part of the State in an information or indictment charging a person for violation of the particular offense, to negative such exception by proper allegations. Any attempt on the part of the Legislature to dispense with such necessary allegation and proof on the part of the State would in all probability be held to violate Sections 10 and 19 of Article I (Bill of Rights) of the State Constitution under the doctrine of Hewitt v. State, supra, and other cases previously cited, and thus the very thing sought to be accomplished by House Bill No. 690 would be defeated.

We are of the further opinion, however, that this objectionable feature may be cured by placing the exception in a separate and distinct section, or article, separate and apart from Section 2 of said Act. In the event this is done the particular wording of the exception as now provided for in Article 827b, Section 2, and also as now contained in House Bill No. 690, should probably, for the sake of clarity be slightly changed.

## SUMMARY

House Bill 690 making it unnecessary in prosecutions arising under Article 827b, Section 2, V. P. C., as amended by said H. B. 690, for the State to allege or prove the exception contained therein with reference to reciprocity in laws is in violation of Sections 10 and 19 of Article I of the State Constitution under the doctrine

of <u>Hewitt v. State</u>, 25 Tex. 722, and <u>Baker</u>
<u>v. State</u>, 106 S. W. (2d) 308 (Tex. Crim.
App. 1937) and cases there cited, inasmuch
as said exception is contained in, and is
a part of, the section defining the offense,
and is descriptive thereof.

Yours very truly,

ATTORNEY GENERAL OF TEXAS

By *Charles D. Mathews*

Charles D. Mathews
Assistant


APPROVED APR. 10, 1947

*Price Daniel*

ATTORNEY GENERAL

CDM:jt:mrj